In re

CHAD M. KOENIGS,

                Debtor.

Case No. 04-23111

Chapter 7

---

PAUL G. SWANSON, TRUSTEE,

                Plaintiff,

v.

CHASE MANHATTAN MORTGAGE CORPORATION,

                Defendant.

Adversary No. 04-2263

---

## MEMORANDUM DECISION GRANTING TRUSTEE'S MOTION TO SEEK RELIEF FROM THE ORDER OF ABANDONMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The debtor filed a chapter 7 petition on March 10, 2004. The trustee filed an asset report on April 16, 2004. The creditor, Chase Manhattan Mortgage Corporation ("Chase"), filed a motion to abandon and modify stay on April 21, 2004, and all creditors were served. After receiving no objection, this court signed an order granting the motion to abandon and to modify the stay on May 13, 2004. The trustee subsequently filed an adversary proceeding to avoid an unperfected security interest in personal property, as well as a motion seeking relief from the order of abandonment. Chase objected to the trustee's motion to seek relief from the order in the

main case and moved for summary judgment in the adversary proceeding. The parties have fully briefed the issues.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated herein, the trustee's motion for relief from the order of abandonment is granted, and the defendant's motion for summary judgment is granted.

## FACTUAL BACKGROUND

The debtor maintains a homestead on land leased from his former employer, Western Lime Corporation. Rent is $100 per month, plus a portion of the real estate taxes attributable to improvements. The personal residence existed on the property before the lease was executed, but the lease stated that the lessor and lessee agreed that the structure had no value. The lease between the debtor and landowner was recorded December 2, 1997, and re-recorded May 11, 1998, to include the real estate description. The term of the lease was for 25 years.

Also prior to the commencement of the case on September 19, 2002, the debtor executed and delivered to the defendant, Chase, a mortgage covering his homestead. The owner of the land, Western Lime, did not join in the Chase mortgage. Chase recorded this mortgage with the county register of deeds on September 26, 2002. Although the mortgage did not include a description of the debtor's structure, nor did it contain any assignment of a lessee's interest in the lease, it did state that the mortgaged property included improvements. Chase did not file any financing statement on the personalty with the Wisconsin Department of Financial Institutions.

The debtor filed his chapter 7 petition on March 10, 2004. On Schedule A - Real Property, the debtor listed:

149:3/1/05                                    2

N4598 County Rd. V, Eden, WI 53019: Debtor owns the house but not the land. Debtor built home on land owned by another party. Land owned by Western Line [sic] Corp.

This adversary proceeding presents two separate issues: (1) whether the trustee's decision to abandon the property by not responding to the defendant's motion is irrevocable; and (2) whether the lien on the debtor's property was properly perfected by the recorded mortgage.

## ARGUMENTS

The trustee argues the mortgage or security interest is unperfected because the debtor did not own or have the right to encumber the real estate, and any pledge of personalty (i.e., the house) is unperfected. The land and structures are two distinct properties and do not appertain to each other. The recorded lease placed Chase on notice of the distinct and separate ownership of the house and land. As personal property, the defendant should have filed a UCC statement to perfect its lien, and recording of the mortgage with the register of deeds has no effect.

Chase claims the trustee lacks standing to bring the action because he failed to object to its motion for relief from the automatic stay and abandonment. Even if the trustee has standing, summary judgment is appropriate because the improvements to the house make it habitable, are affixed to the land, and are considered real estate. Chase states it has a mortgage on the debtor's interest in the described property and improvements. The lease was recorded and showed the interest that the debtor had. Building improvements are not personal property, and thus the security interest was properly perfected.

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 3 of 13

DISCUSSION

*Revocation of Abandonment*

Different courts have addressed this issue and have analyzed the problem in slightly different ways. The general rule is that once property has been abandoned pursuant to § 554, its abandonment is irrevocable. *See In re DeVore*, 223 B.R. 193 (B.A.P. 9th Cir. 1998); *In re Wiesner*, 267 B.R. 32 (Bankr. D. Mass. 2001); *In re Gibson*, 218 B.R. 900 (Bankr. E.D. Ark. 1997).

There are nevertheless certain circumstances under which revocation of abandonment has been deemed appropriate. A formal abandonment of an asset may be set aside to permit administration of the property as an asset of the estate where the asset was concealed, or the trustee's decision to abandon was based on incorrect information provided by another entity, and the trustee's reliance on the information was reasonable. *In re Buckner*, 224 B.R. 760 (Bankr. E.D. Mo. 1998). Revocation of a bankruptcy trustee's abandonment of an asset to the debtor has also been allowed where the trustee was given incomplete or false information of the asset by the debtor, thereby preventing a proper investigation of the asset. *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001); *In re Schoenewerk*, 304 B.R. 59 (Bankr. E.D. N.Y. 2003); *Matter of Hunter*, 76 B.R. 117 (Bankr. S.D. Ohio 1987). Such does not appear to be the case here. As noted above, the debtor's schedules disclosed the debtor owned the house but not the land.

In effect, abandonment of an asset will not be deemed irrevocable if the trustee had been misled as to the nature or existence of an asset. Incomplete disclosure, reasonably resulting in only a cursory examination, may be grounds for revocation. *In re Bryson*, 53 B.R. 3 (Bankr. M.D. Tenn. 1985); *In re Killebrew*, 101 B.R. 471 (Bankr. S.D. Miss. 1988), *aff'd*, 888 F.2d 1516

(5th Cir. 1989) (exception to irrevocable rule arises when trustee is given scant information or misinformation which leads trustee to rely on debtor's statements as true, thereby foregoing in-depth investigation).

Generally, authority for revocation is found in Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60(b), when the abandonment was based on mistake. *In re Schmid*, 54 B.R. 78 (Bankr. D. Or. 1985) (case closed as a "no assets" case). Although the trustee in *In re Gonzalez*, 302 B.R. 687 (Bankr. C.D. Cal. 2003), did not specifically raise the rule, he argued mistake and inadvertence as a basis for revocation. The trustee's motion was filed within one year of the order closing the debtor's case, and the debtor had not shown that she detrimentally relied on the abandonment. The court allowed the abandonment to be withdrawn.

There have been instances when abandonment was withdrawn if it took place due to a meaningful clerical mistake or inadvertence of the trustee. *See, e.g., In re Ozer*, 208 B.R. 630 (Bankr. E.D. N.Y. 1997). Nevertheless, it is important to keep in mind that attorney negligence or oversight rarely warrants relief from judgment. *In re Kellogg*, 197 F.3d 1116 (11th Cir. 1999). The fact that an asset may be more valuable than originally believed is not sufficient, as long as there was enough information for the trustee to know that investigation was necessary.

The determination as to whether appropriate circumstances exist to reopen a bankruptcy case and undo a technical abandonment of estate property include the following: (1) whether denial of the motion would result in injustice to creditors, (2) whether the trustee was initially afforded the ability to make an informed decision with respect to administering the asset, (3) whether the debtor substantially improved the abandoned property, (4) whether the failure to properly administer the property was the trustee's fault, and (5) whether significant time has

149:3/1/05                                                  5

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 5 of 13

passed since the trustee abandoned the property. *In re Arboleda*, 224 B.R. 640 (Bankr. N.D. Ill. 1998). Although we do not have a technical abandonment in this case, the standard articulated in *Arboleda* is instructive.

In this circuit, courts have not been unduly rigid about enforcing the irrevocability of an abandonment by a trustee. For example, revocation of abandonment was permitted in *Matter of Alt*, 39 B.R. 902 (Bankr. W.D. Wis. 1984), where the trustee's abandonment by filing of a no-asset report was a mistake and where there was no allegation of undue prejudice. Judge Martin further found that § 546(a) did not bar the trustee from commencing an adversary proceeding to recover a preference.

In *Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786 (7th Cir. 1981), the trustee abandoned certain accounts receivable because he believed a creditor had a perfected security interest in the accounts. The trustee later learned that the creditor's financing statement contained an error and was unperfected. The trustee then sought to revoke his abandonment of the accounts. The court of appeals held that where there was a mistake in the original abandonment and where the purported secured creditor had not been prejudiced, the trustee could revoke his prior abandonment of the accounts. *Id.* at 791. The court then added:

> [T]he provisions of Rule 60 of the Federal Rules of Civil Procedure are applicable to bankruptcy practice and would have provided a basis for setting aside the ... abandonment order even if the bankruptcy judge had been otherwise specifically prohibited from reconsidering such orders. *See* R. Bankr. P. 924. The absence of an explicit ban on reconsideration of abandonment orders in the Bankruptcy Rules and the availability of alternative relief [under Rule 60] tend to indicate that abandonment orders remain subject to the "ancient and elementary power (of the bankruptcy judge) to reconsider" his own orders. *[In re] Pottasch Bros.*, 79 F.2d [613] at 616 [ (2$^{d}$ Cir. 1935) ]. If a mistake has been made, it should be corrected, if the correction is not unfairly prejudicial to innocent parties.

Id.

In *Alt*, the trustee had overlooked a possible preference action and was allowed to revoke his prior abandonment and to recover the preference. As the court noted in *Alt*, the trustees in both *Alt* and *Lintz* overlooked available information before the abandonment and then sought to correct the mistake. *Alt*, 39 B.R. at 904. In both cases, the fact that third parties did not change position in reliance on or would not be harmed by revocation of the trustee's abandonment appears to be determinative. In this case, it is not alleged that Chase took any action in reliance on the abandonment that would tip the scales in favor of denying withdrawal of the abandonment.

In *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489 (1993), the Supreme Court interpreted "excusable neglect," as that term is used in Fed. R. Bankr. P. 9006(b), to extend to a lawyer's failure to meet a filing deadline. *See also Robb v. Norfolk & W. Ry.*, 122 F.3d 354, 361 & n. 5 (7th Cir. 1997) (adopting *Pioneer's* approach to "excusable neglect" for application of Rule 60(b)(1)). *Pioneer* interpreted "excusable neglect," in the context of the filing deadlines, to include at least some situations of negligence by the party seeking relief. *Pioneer*, 507 U.S. at 394-95. To distinguish excusable from inexcusable conduct, the Supreme Court offered the following guidance:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395 (footnote omitted).

149:3/1/05         7

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 7 of 13

Everyone in this case acted in good faith. The debtor fully disclosed his interest in the asset. The trustee, along with all other interested parties, received notice of the creditor's motion for relief from stay and abandonment and did not respond. He also received the creditor's affidavit of default and proposed order and did not object. These factors tip the scales toward irrevocability of the court's order. On the other hand, the issue is unusual and complicated. Separate ownership of a house and land is not something the trustee sees often. The lease and mortgage had to be interpreted, and the resolution is far from obvious. As a first impression, the trustee could well conclude that a mortgaged house is worth much less than a mortgaged house plus land, and he might dismiss the possibility of value for the estate. Such factors readily lead to inadvertence. However, when he reflected further, the trustee acted promptly to file his motion to withdraw the abandonment and to file this adversary proceeding, and Chase had not acted in reliance on the abandonment. Finally, it is generally good policy to resolve a dispute on the merits rather than to allow one party to benefit from another's mistake, especially when the interests of creditors is at stake. Therefore, the court concludes that the present circumstances warrant relief from the order of abandonment, thus allowing the trustee to bring this proceeding; the trustee's motion is granted.

*Avoidance of Lien*

The parties provided the court with the lease and mortgage, and the parties' briefs make clear that there are no genuine issues of material fact in dispute. The only dispute is an objective, legal interpretation of the documents involved. Therefore, the court can decide whether Chase has an unavoidable secured interest in the debtor's property as a matter of law. Fed. R. Bankr. P. 7056. The court is satisfied that it does.

In Wisconsin, the determination of whether personal property annexed to land remains tangible personal property or instead becomes a real property improvement is governed by the three-part test articulated in a Wisconsin sales and use tax case by the state supreme court. *Wisconsin Dep't. of Revenue v. A.O. Smith Harvestore Prods., Inc.*, 72 Wis. 2d 60, 68, 240 N.W.2d 357 (1976). The *Harvestore* test uses three elements to analyze whether property affixed to land becomes a real property improvement: (1) annexation to land; (2) adaptation to the use to which the land is devoted; and (3) intent to permanently affix the property to the land. *Harvestore*, 72 Wis. 2d at 67-68. The court further held that, when classifying an item as real or personal property under Wisconsin law, a different legal standard is applicable to fixtures installed by a tenant than to fixtures placed on property by the landowner:

> Where a tenant installs fixtures, there is a presumption that they are temporary and that he intends to remove them at the end of the lease period. In fact, the appellant here concedes that it does not regard as fixtures those relatively few Harvestores sold to tenant farmers. The rule is different, however, when an owner purchases a structure, and has it erected on realty which he owns.

*Harvestore*, 72 Wis. 2d at 73. The state court of appeals later cautioned that the real versus personal property determination depends on context as well as physical facts:

> While many decisions distinguish real estate from personal property, they do so in various contexts. Borrowing language from one context and applying it to another poses a danger.
>
> 'Questions of what fixtures pass as real estate arise principally in the following situations: (1) between vendor and vendee; (2) mortgagor and mortgagee; (3) landlord and tenant; (4) owner of life estate and remainderman; (5) seller under a conditional sales contract as against mortgagee and subsequent vendees and prior mortgagees; (6) with reference to taxation. Generally speaking the rule is very liberal with respect to the rights of mortgagees and vendees. A much stricter rule is applied as against a landlord in a contest between landlord and tenant. It is probable that no branch of the law is in greater confusion than the law of fixtures. Confusion is due in some degree at least to a failure to classify the cases. There is a constant tendency to carry over decisions in one

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 9 of 13

classification and to apply them to cases in other classifications, ignoring the difference in the legal relation of the parties.'

*All City Communication Co. v. State Dept. of Revenue*, 263 Wis.2d 394, 407, 661 N.W.2d 845, 2003 WI App 77 (Ct. App. 2003) (quoting *Thomsen v. Cullen*, 196 Wis. 581, 598-99, 219 N.W. 439 (1928); applying the *Harvestore* factors, but relying only on those cases that applied the *Harvestore* test in taxation disputes).

In this case, we do not have a contest between the landlord and tenant, but their agreement with respect to the tenant's interest in what was being put on the property is important. There was a house and garage on the property at the beginning of the lease, and although the parties stated these structures had no value, they were still improvements affixed to the land. The debtor's improvements were to the existing structures, and these improvements would not change the nature of the structures as real estate. The parties to the lease provided for an apportionment of the real estate tax obligations based on the relative value of the land and the improvements, so it appears they assumed real estate taxes would apply to the improvements. The lease is for 25 years, indicating a certain amount of permanence generally associated with real estate. The debtor agreed to move the house at the end of the term, but it is not clear that there is any penalty for not doing so. The lease states the debtor owned the improvements, but he was not authorized to sell or "underlet" the improvements without the landlord's consent, which is not consistent with the concept of personal property that could be hauled away at any time.

According to *Harvestore*, intent must be determined from objective circumstances, not from subjective agreements between the annexor and other parties. *Harvestore*, 72 Wis. 2d at 70. "The determinative intent is that of the annexor, ... and the question is whether he intends to

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 10 of 13

make a permanent accession to the freehold." *Id.* at 68-69. Critically, "[t]his intention is 'not the actual subjective intent of the landowner making the annexation, but an objective and presumed intention of that hypothetical ordinary reasonable person, to be ascertained in the light of the nature of the article, the degree of annexation, and the appropriateness of the article to the use to which the realty is put'." *Id.* at 69 (citation omitted). Here, all agree the asset is used as the debtor's homestead.

There are several cases[1] which support the proposition that a tenant's tangible personal property affixed to rented property is presumed to retain its character as tangible personal property. *See State v. Bodden*, 166 Wis. 219, 164 N.W. 1009 (1917); *Shields v. Hansen*, 201 Wis. 349, 230 N.W. 51 (1930). These cases, however, arose in the trade fixtures context. In such context, it is normal for a business operating on leased or rented property to intend to take its trade fixtures along if it changes locations, as it cannot continue to do business without those fixtures. *See Bodden*, 166 Wis. at 220. The same circumstances obviously do not apply in this case. Here, the debtor did not install a trade fixture that he could easily move to another location and continue to use, but a house.

In its discussion of intent, the Wisconsin Supreme Court found legal support for its conclusion in a Pennsylvania lower court decision. *See Harvestore*, 72 Wis. 2d at 72 (citing *Wolfe Tax Appeal*, 42 Pa. D. & C.2d 119 (1966)), *affirmed per curiam sub nom*, 230 A.2d 922

---

[1] Another case discussed the status of permanent structures in the unique context of Indian ownership. In the *Town of Menominee v. Skubitz*, 53 Wis.2d 430, 192 N.W.2d 887 (1972), the Wisconsin Supreme Court held that under statutes allowing improvements on leased lands to be assessed as either personalty or real property, the term "leased lands" encompassed land owned by a corporation charged with management of lands for the benefit of the Menominee tribe. *Personal* property taxes could be assessed on buildings owned by a tribe member even though no formal lease existed.

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 11 of 13

(Pa. Super. Ct. 1967). The Pennsylvania decision was described by the Wisconsin Supreme Court as well-reasoned and persuasive. *See Harvestore*, 72 Wis. 2d at 72. The court in *Wolfe* stated the following:

> <u>Some structures are inherently real estate, as, for example, a house or a barn</u>. Generally, buildings have been considered as such. At the turn of the last century, our Superior Court was called upon to determine the taxability of a stationary, though movable, sawmill: *Bemis v. Shipe*, 26 Pa. Superior Ct. 42 (1904). The mill was owned by a lessee of the land who had the right to remove, as has been customary with sawmills for generations past. The court there held that the sawmill was taxable real estate. This case was cited with approval by the same court in the recent case of *Penn-Lehigh Corp. Appeal*, 191 Pa. Superior Ct. 649 (1960). It was therein reiterated that as between an owner of land and an owner of a building, the structure may be treated as personal property, but it by no means follows that in contemplation of law for other purposes it is not real estate. The court continued: "There is no doubt and there never has been any, that buildings are real estate and are, therefore, taxable as such". In our opinion, the Harvestore qualifies as a building.

*Wolfe*, 42 Pa. D. & C. 2d at 123-124 (emphasis added). So according to the case which the Wisconsin Supreme Court found well-reasoned and persuasive, a house is inherently real estate. It may be treated as personal property as between the landlord and tenant or between a taxing authority and taxpayer, but this does not change what it objectively is. Therefore, the court holds that the debtor's house in this case is real estate.

The instant case does not involve a contest between landlord and tenant or between the taxing authority and taxpayer. The trustee is challenging how the mortgagor and mortgagee treated their transaction, i.e., as a grant of an interest in real estate or the grant of a security interest in personal property. The court holds that the debtor and Chase also treated the debtor's improvements as real estate. The "Transfer of Rights in the Property" section of the mortgage references the legal description of the real estate. This is sufficient to show that the debtor was granting a mortgage in his interest in the described real estate, i.e., the recorded 25 year lease.

Case 04-23111-mdm    Doc 23    Filed 03/01/05    Page 12 of 13

The grant of mortgage in the improvements is unambiguous. Since both the interest in the land and the improvements were subject to the mortgage, the register of deeds is the proper place to record it.

Accordingly, the defendant's motion for summary judgment is granted and the complaint is dismissed. A separate judgment will be entered, without costs to either party.

Dated: March 1, 2005.

BY THE COURT:

Honorable Margaret Dee McGarity
Chief United States Bankruptcy Judge